UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

_____
                                                    :
DEUTSCHE BANK  TRUST COMPANY        :      Civil Action No. 1:11-cv-358
AMERICAS,                                       :      (Judge Beckwith)
in its capacity as successor indenture trustee for   :      (Magistrate Judge Bowman)
certain series of Senior Notes, *et al.*,           :
                                                    :
                             Plaintiffs,        :
   vs.                                          :
                                                    :
AMERICAN ELECTRIC POWER DEFINED     :
BENEFIT, *et al.*,                              :
                                                    :
                             Defendants.        :
_____            :

**AMENDED MOTION TO STAY DEFENDANTS' TIME TO RESPOND TO THE
COMPLAINT IN THIS ACTION OR COMMENCE MOTIONS PRACTICE UNTIL
FURTHER ORDER OF THE UNITED STATES BANKRUPTCY COURT FOR THE
DISTRICT OF DELAWARE OR FURTHER ORDER OF THIS COURT**

        The Plaintiffs, Deutsche Bank Trust Company Americas ("DBTCA") in its capacity as

successor indenture trustee for a certain series of Senior Notes (as hereinafter defined), Law

Debenture Trust Company of New York ("Law Debenture") in its capacity as successor

indenture trustee for a certain series of Senior Notes (as hereinafter defined), and Wilmington

Trust Company ("Wilmington Trust") in its capacity as successor indenture trustee for the

PHONES Notes, by and through their undersigned counsel, respectfully request that the Court

stay the time for Defendants to respond to the Complaint or commence motions practice in this

action (the "Stay") until further Order of the United States Bankruptcy Court for the District of

Delaware or further Order of this Court and in support thereof state as follows:

1.      On June 2, 2011, Plaintiffs filed their Complaint seeking damages for a failed leveraged buyout of Tribune Company ("Tribune") in 2007 that resulted in Tribune filing for bankruptcy.

2.      On July 5, 2011, the Plaintiffs filed a Motion to Stay Defendants' Time to Respond to the Complaint in this Action or Commence Motions Practice Until the Earlier of October 31, 2011, Confirmation of a Plan of Reorganization by the United States Bankruptcy Court for the District of Delaware, Further Order of the United States Bankruptcy Court for the District of Delaware, or Further Order of This Court (Docket No. 68) (the "Motion to Stay"). Also on July 5, 2011, the Plaintiffs filed a Memorandum of Law in Support of the Plaintiffs' Motion to Stay Defendants' Time to Respond to the Complaint in this Action or Commence Motions Practice Until the Earlier of October 31, 2011, Confirmation of a Plan of Reorganization by the United States Bankruptcy Court for the District of Delaware, Further Order of the United States Bankruptcy Court for the District of Delaware, or Further Order of This Court (Docket No. 69) (the "Memorandum of Law").

3.      Chief Judge Carey of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") is presiding over the Tribune's chapter 11 proceedings (Case no. 08-13141 (KJC)) (the "Bankruptcy Proceeding").

4.      In an Order dated April 25, 2011 (the "SLCFRC Order"), the Bankruptcy Court, among other things, authorized the Plaintiffs to commence state law constructive fraudulent conveyance lawsuits provided that Plaintiffs filed an application for a stay after the litigation commenced.  Consistent therewith, the Plaintiffs filed their Complaint on June 2, 2011 and, thereafter, filed the Motion to Stay and the Memorandum of Law on July 5, 2011.

5.      The prior Motion to Stay requested and corresponding proposed orders reflected a Stay until the earlier of:

(i)     October 31, 2011, without prejudice to any further motion by Plaintiffs to

seek a later date or otherwise extend the Stay;

(ii)    order by the Bankruptcy Court in the Tribune Company's ("Tribune")

Chapter 11 proceedings (the "Bankruptcy Proceeding") (Case No. 08-13141

(KJC)) confirming a plan of reorganization;

(iii)   further Order of the Bankruptcy Court; or

(iv)    further Order of this Court.

6.      On July 15, 2011, Judge Carey observed that the references to (i) the October 31,

2011 date (or any date certain), and (ii) confirmation of a plan of reorganization by the

Bankruptcy Court as  triggering dates for the stay to terminate were not entirely in line with the

terms of the SLCFC Order.   *See* Declaration of David M. Zensky (the "Zensky Declaration")

¶19.

7.      Accordingly, Plaintiffs have revised the language of the requested relief so that

the only events that should trigger the time for Defendants to respond to the Complaint or

commence motion practice are further orders by the Bankruptcy Court or this Court that affect

the Stay, and so that the language of the requested relief otherwise tracks the language of the

SLCFC order (Zensky Decl. at ¶ 20).

WHEREFORE, Plaintiffs, by counsel, respectfully request that the Court (a) stay the time

for Defendants to respond to the Complaint or commence motions practice in this action until

further order of the Bankruptcy Court or this Court, (b) provide limited relief from the stay as set

forth in the Amended Memorandum of Law and Amended Proposed Order, and (c) provide all

other appropriate relief.

Dated:  July 22, 2011

Respectfully submitted,

/s/ Richard S. Wayne
Richard S. Wayne Ohio Bar #0022390

/s/ Charles C. Ashdown
Charles C. Ashdown Ohio Bar #0037269

OF COUNSEL:

/s/ Nicolas D. Wayne
Nicolas D. Wayne Ohio Bar #0083690

Daniel H. Golden
David M. Zensky
Stephen M. Baldini
James P. Chou
Jason L. Goldsmith
AKIN GUMP STRAUSS HAUER
  & FELD LLP
One Bryant Park
New York, NY  10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

STRAUSS & TROY
150 East Fourth Street
Cincinnati, OH  45202-4018
(513) 621-2120 – Telephone
(513) 241-8259 – Facsimile
E-mail:  *rswayne@strausstroy.com*
E-mail:  *ccashdown@strausstroy.com*
E-mail:  ndwayne@strausstroy.com

*Counsel for Plaintiffs, Deutsche Bank Trust*
*Company Americas, et al.*

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing has been filed electronically with the U.S. District Court for the Southern District of Ohio this 22nd day of July, 2011. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. If a party is not given notice electronically through the Court's system, a copy will be served by First Class U.S. Mail this 22nd day of July, 2011.

/s/ Charles C. Ashdown
Charles C. Ashdown Ohio Bar #0037269

2628873.1

4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| _____ | : | |
| DEUTSCHE BANK  TRUST COMPANY | : | Civil Action No. 1:11-cv-358 |
| AMERICAS, | : | (Judge Beckwith) |
| in its capacity as successor indenture trustee for | : | (Magistrate Judge Bowman) |
| certain series of Senior Notes, *et al*., | : | |
| | : | |
| Plaintiffs, | : | |
| vs. | : | |
| | : | |
| AMERICAN ELECTRIC POWER DEFINED | : | |
| BENEFIT, *et al*., | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' AMENDED MOTION TO
STAY DEFENDANTS' TIME TO RESPOND TO THE
COMPLAINT IN THIS ACTION OR COMMENCE MOTIONS PRACTICE**

As directed by the United States Bankruptcy Court for the District of Delaware (the

"Bankruptcy Court") in an order dated April 25, 2011 ("SLCFC Order"), Plaintiffs Deutsche

Bank Trust Company Americas, in its capacity as successor indenture trustee for a certain series

of Senior Notes ("DBTCA"), Law Debenture Trust Company of New York, in its capacity as

successor indenture trustee for a certain series of Senior Notes ("Law Debenture"), and

Wilmington Trust Company, in its capacity as successor indenture trustee for the PHONES Notes

("Wilmington Trust" and, together with DBTCA and Law Debenture, "Plaintiffs"), hereby

request that the Court stay the time for Defendants to respond to the Complaint or commence

motion practice in this action (the "Stay") until further order by the Bankruptcy Court in the

1

Tribune Company's ("Tribune") chapter 11 proceedings (the "Bankruptcy Proceeding") (Case No. 08-13141 (KJC)), or further Order of this Court.

## INTRODUCTION

This litigation arises from the failed leveraged buyout of Tribune in 2007 (the "LBO"). Financial and industry analysts at the time described this transaction as one of the most highly leveraged and ill-advised in history.  (Compl. ¶ 1.)  Despite Tribune's declining business, pursuant to the LBO, Tribune paid its former shareholders $8.5 billion in cash at the expense of Tribune's existing creditors, and precipitated the company's descent into bankruptcy shortly thereafter.  *Id.*  In this action, Plaintiffs assert claims that seek to avoid and recover, as constructively fraudulent conveyances, all transfers of proceeds received by each defendant in connection with the LBO (and together with the state-law constructive fraudulent conveyance cases brought by Plaintiffs in 21 other states, the "Creditor SLCFC Claims").  (Compl. ¶ 2.)

The Honorable Kevin J. Carey, Chief Judge of the United States Bankruptcy Court for the District of Delaware, has presided over the Tribune Bankruptcy Proceeding since the Debtors' chapter 11 filings in 2008.  On April 25, 2011, Chief Judge Carey issued an order providing that neither sections 362(a) nor 546(a) of the Bankruptcy Code bar Plaintiffs from *filing* state law constructive fraudulent conveyance claims against former Tribune shareholders.  (*See* SLCFC Order ¶¶ 2, 3, attached as Exhibit C to the Declaration of David Zensky dated Friday, July 1, 2011, in Support of Plaintiffs' Motion to Stay ("Zensky Decl.").)  While Judge Carey's order authorized the Plaintiffs to file their state law constructive fraudulent conveyance claims, Judge Carey also ordered that any such claims be stayed in order for the Bankruptcy Court to address certain objections by parties in interest challenging proposed plans of reorganization.  (*See* Zensky Decl. Ex. C ¶ 6.)

Plaintiffs bring this motion in order to comply with the SLCFC Order, which is binding on them. In addition, Plaintiffs seek a Stay for the independent reasons that a Stay will allow sufficient time (a) for the Bankruptcy Court to confirm a plan of reorganization, which plan may impact Plaintiffs' claims here; and (b) for the Plaintiffs to file a motion requesting that the Judicial Panel on Multidistrict Litigation (the "MDL Panel") transfer and consolidate this action along with the other similar Creditor SLCFC Claims that Plaintiffs have filed in federal courts across the country. Thus, the Stay will benefit all the parties in interest to this action as well as the Court.

The requested Stay, which will obviate the need for Defendants to answer or otherwise respond to the complaint (or engage in any substantive litigation of the merits), contains two primary carve-outs. First, Plaintiffs request that the Stay permit them to take limited discovery (subject to first receiving an order of the Court) that may be necessary solely for the purpose of preventing applicable statutes of limitation or other time-related defenses from barring any state law constructive fraudulent conveyance claims against any former Tribune shareholder to recover stock redemption/purchase payments made to such shareholders in connection with the 2007 Tribune LBO – something the SLCFC Order specifically contemplates. (Zensky Decl. Ex. C ¶ 6.) Second, Plaintiffs request that the Court's Stay order require the Defendants or their counsel to enter an appearance in the action, so that their identities will be known and they can readily be served with any further notices, orders, or other pleadings in the case. Additional carve-outs include a request that Plaintiffs be allowed to (i) amend the Complaint or file a motion for leave to amend the Complaint; (ii) voluntarily dismiss this action or one or more Defendants pursuant to Federal Rule of Civil Procedure 41; (iii) move to add or drop a party or to sever any

claim against a party pursuant to Federal Rule of Civil Procedure 21; and (iv) file their MDL Motion.

## FACTUAL BACKGROUND

*A.  The Tribune Bankruptcy Proceeding and the Competing Plans of Reorganization*

In 2008, the Tribune and many of its operating subsidiaries (collectively the "Debtors") jointly filed for bankruptcy.  (Cmpl. ¶ 103.)   Upon the December 8, 2008 petition date, Bankruptcy Code section 546(a) afforded the Debtors' estates a two-year period in which they had the exclusive right to commence state law fraudulent conveyance claims.

On November 1, 2010, on behalf of the Debtors' estates, the Official Committee of Unsecured Creditors (the "Committee") initiated an adversary proceeding against, *inter alia*, all of Tribune's shareholders who received proceeds from the LBO, including Defendants in this instant action, alleging that the LBO was an *intentional* fraudulent conveyance (the "Committee Action") (*In re Tribune Co.*, No. 08-13141 (KJC) (Del. Bankr.); *Official Committee of Unsecured Creditors of Tribune Co. v. FitzSimmons*, Adv. Pro. No. 10-54010 (KJC) (Del. Bankr.)).   The Committee Action does not, however, include state law *constructive* fraudulent conveyance claims against the Tribune's shareholders to recover Shareholder Transfers.   Because the statutory period during which the Debtors had exclusive standing to bring state law constructive fraudulent conveyance claims expired on December 8, 2010 (two years after the petition date), the Plaintiffs, and other Creditors, regained their ability to commence such actions (*e.g.*, the instant case) on their own behalf.  (Zensky Decl. ¶ 3.)

On February 4, 2011, the Debtors, the Committee, and certain lender parties in interest filed their Second Amended Joint Plan of Reorganization for the Debtors (the "DCL Plan"). (Zensky Decl. ¶ 4.)  On February 25, 2011, the largest noteholder of the Debtors, and Plaintiffs

herein, jointly filed a competing plan of reorganization (the "Noteholder Plan" and together with the DCL Plan, the "Competing Plans"). (Zensky Decl. ¶ 4.) The Competing Plans, objected to by certain parties, included a mechanism by which state law constructive fraudulent conveyance claims, such as those asserted in this action, could be transferred to and litigated by a Creditors' Trust, and proceeds from such actions would flow to beneficiaries according to terms of the Competing Plans. (Zensky Decl. ¶¶ 5, 6.) The Robert R. McCormick Tribune Foundation and the Cantigny Foundation (together, the "Plan Opponents") objected to both the Competing Plans because, among other things, they contend that Bankruptcy Code section 546(e) bars state law causes of action to recover payments to stockholders in exchange for the transfer of securities. (Zensky Decl. ¶ 7.)

The Bankruptcy Court held a two-plus week evidentiary trial on the Competing Plans of reorganization, and closing argument occurred on June 27, 2011. Zensky Decl. ¶ 8. The Bankruptcy Court has reserved decision.

### B. The SLCFC Order and Commencement of Plaintiffs' 50 State Law Actions

Assuming *arguendo* that Plaintiffs' Creditor SLCFC Claims are subject to a four-year statute-of-limitations period applicable in certain states, the time for filing suit against certain defendants arguably would have expired on or shortly after June 4, 2011. On March 1, 2011, to prevent state law causes of action from arguably becoming time-barred while the litigation over the Competing Plans continued, Plaintiffs moved the Bankruptcy Court for an order (i) determining that eligible creditors had regained the right to prosecute the Creditor SLCFC Claims; (ii) determining that the automatic stay did not bar commencement of the Creditor SLCFC Claims by Plaintiffs; and (iii) granting leave from a mediation order by the Bankruptcy Court to permit commencement of the Creditor SLCFC Claims (the "Standing Motion," attached

5

as Exhibit A to Zensky Decl.).  On April 25, 2011, the Bankruptcy Court granted the Standing Motion and issued the SLCFC Order permitting Plaintiffs to (a) commence state law constructive fraudulent conveyance litigation, and (b) pursue discovery as necessary to prevent any applicable statute of limitations or time-related defenses from barring Plaintiffs' claims, provided that (c) Plaintiffs filed an application for a stay after the litigation commenced.  (*See* Zensky Decl. Ex. C ¶¶ 2-4, 6.)

That the Bankruptcy Court wanted this lawsuit stayed after it was filed is made clear not only by the SLCFC Order itself, but also by Judge Carey's remarks at the hearing on the Standing Motion.  Judge Carey stated:

> … I would be willing to say, to the extent the [Bankruptcy Code section 362 automatic] stay does apply, it's lifted, solely to permit the commencement of such [state law] litigation.  But I would like the memorialization, until further order of the Court…that no litigation should be pursued or prosecuted, because I am concerned about whether there would be implications with respect to any decision I might make in connection with confirmation of a plan, and I want to reserve, to myself and to the parties who have objected to confirmation, to make whatever arguments they have to make without being hampered by an order that I'm entering here.  I don't mean to dispose of any of those rights.

(Tr. of Proceedings, March 22, 2011 at pp. 100-01, relevant portion attached as Exhibit B to Zensky Decl. (emphasis added).)

On June 2, 2011, Plaintiffs commenced this action, are now in the process of serving Defendants with the Complaint, and now seek a Stay. (Zensky Decl. ¶ 13.)

## ARGUMENT

The Court should give deference to the Bankruptcy Court's SLCFC Order and temporarily stay this lawsuit.  Moreover, and perhaps in any event, the Court should exercise its discretion and stay this matter in order to allow: (a) time for the Tribune Bankruptcy Proceeding over plan confirmation to conclude; and (b) time for Plaintiffs' forthcoming MDL motion to be fully adjudicated.

It is well established that a court's "power to stay a case is 'incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'"  *Walker v. Merck & Co., Inc.*, No. 05-360, 2005 U.S. Dist. LEXIS 13693, at *5 (S.D. Ill. June 22, 2005) (quoting *Landis v. N. Am. Co*., 299 U.S. 248, 254 (1936)).  A district court has "broad discretion to stay proceedings as an incident to its power to control its own docket."  *Ezell v. City of Chicago*, No. 10-5135, 2011 U.S. Dist. LEXIS 38547, at * 3 (N.D. Ill. Apr. 8, 2011) (quoting *Clinton v. Jones*, 520 U.S. 681, 706 (1997)); *Kavalir v. Medtronic, Inc.*, No. 07-835, 2007 U.S. Dist. LEXIS 30002, at * 10 (N.D. Ill. April 19, 2007) (district court has "inherent power" to stay proceedings "pending the matter's likely transfer to the MDL").  Here, the Stay is appropriate and should therefore be granted.

**I.      The Litigation Over Tribune's Plan Confirmation Substantially Impacts This Action, And The SLCFC Order Requiring The Stay Should Be Given Due Deference.**

Courts recognize that a stay is appropriate where, as here, another pending matter could have a substantial impact on that litigation.  *See Cigna Healthcare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 851 (7th Cir. 2002) ("A federal court is authorized to stay proceedings in a lawsuit before it because parallel proceedings are pending in another court, either federal or state"); *Azar v. Merck & Co., Inc.*, No. 06-579, 2006 U.S. Dist. LEXIS 78655, at ** 4-5 (N.D. Ind. Oct. 27, 2006) (granting stay order where, among other things, the factual and legal issues before the court were "similar" to those raised by other VIOXX products liability lawsuits pending in other federal courts).  The connection between the Bankruptcy Court's pending determination of the Plan Opponents' objection, and the Creditor SLCFC Claims asserted here, justifies the Stay.

Indeed, the potential for Plan litigation to impact Plaintiffs' ability to successfully prosecute the Creditor SLCFC Claims was what caused Judge Carey to require a stay as part of his order permitting Plaintiffs to file these lawsuits.  As the Court expressly ordered:

> [A State Shareholder Avoidance Action] commenced by the filing
> of any complaint…shall automatically be stayed in the applicable
> state court(s) where such complaint(s) are filed, or if not automatic
> in such state court(s), then application for the stay in accordance
> with the provisions of this Order shall be made by the [] Plaintiff
> Group or any other creditor that files its own complaint….

(*See* Zensky Decl. Ex. C ¶ 6.)

Plaintiffs respectfully request that this Court defer to Chief Judge Carey's SLCFC Order and stay this action until further Order of the Bankruptcy Court or this Court that affects the Stay..

## II.      The Stay Is Appropriate Given Plaintiffs' Forthcoming MDL Motion.

The Court should also grant a stay for the independent reason that it would allow for the adjudication of Plaintiffs' forthcoming MDL motion.  Federal courts routinely determine that it is appropriate to stay preliminary pretrial proceedings while a motion to transfer is pending before the MDL Panel.  *See Azar*, 2006 U.S. Dist. LEXIS 78655, at * 3 ("The interest of judicial economy is often best served by staying preliminary pretrial proceedings while a motion to transfer and consolidate is pending with the MDL Panel."); *Paul v. Aviva Life & Annuity Co.*, No. 09-1038, 2009 U.S. Dist. LEXIS 64420, at ** 2-6 (N.D. Ill. July 27, 2009) (granting motion to stay proceedings pending a decision by the Judicial Panel on Multidistrict Litigation on a motion to transfer).  Factors courts consider in deciding whether to grant a stay to allow time to decide whether to transfer a case to an MDL include: (1) whether judicial economy favors a stay; (2) the potential prejudice to the non-moving party; and (3) any hardship or inequity to the moving party if the case is not stayed.  *See Paul*, 2009 U.S. Dist. LEXIS 64420, at * 2.  Here, all of these factors strongly favor issuance of the Stay.

A.      *The Stay Will Conserve Judicial Resources.*

Almost by definition, entry of a stay will conserve judicial resources because it will avoid the otherwise inevitable preconsolidation proceedings that will be rendered duplicative and inefficient in the likely event that Plaintiffs' MDL motion is granted.  Courts have repeatedly found that judicial economy weighs in favor of a stay where, as here, the court is likely to lose jurisdiction in the near future.  *See*, *e.g.*, *Rhodes v. Merck & Co., Inc.*, No. 06-831, 2006 U.S. Dist. LEXIS 88003, at ** 2-3 (S.D. Ill. Dec. 4, 2006) ("judicial economy weighs in favor of granting a stay"); *see also Azar*, 2006 U.S. Dist. LEXIS 78655, at * 4 ("the resources of this Court will not be well spent familiarizing itself with a case that it will likely lose jurisdiction over in the near future").

Moreover, Plaintiffs' MDL motion is likely to be granted because, as the MDL Panel has recognized, consolidation is called for when "the prevalence of common factual issues and similar class allegations… [prevents] duplication of discovery and eliminate[s] the possibility of inconsistent or overlapping class determinations."  *In re U.S. Financial Securities Litigation*, 375 F. Supp. 1403, 1404 (J.P.M.L. 1974) (per curiam); *see also In re Lehman Brothers Holdings, Inc., Securities & Employee Retirement Income Security Act (ERISA) Litigation*, 598 F. Supp. 2d 1362, 1364 (J.P.M.L. 2009) (transfer of seventeen actions pending in five districts warranted when the actions were "expected to focus on a significant number of common events, defendants, and/or witnesses," that is, whether the "defendants allegedly made materially false and/or misleading statements which had a negative impact on [the] securities.").

Plaintiffs' MDL motion is also likely to be granted because, without centralization, there is a significant risk of conflicting decisions regarding, among other things, class certification. *See e.g., In re NorthStar Educ. Fin. Inc.*, 588 F. Supp. 2d 1370 (J.P.M.L. 2008) (centralizing actions to prevent inconsistent pretrial rulings especially because of class certification issues);

9

*Paul*, 2009 U.S. Dist. LEXIS 64420, at ** 4-5 (finding that movant "could suffer a hardship if a stay is denied" because, among other things, there was a risk of "conflicting decisions on similar pre-trial issues from this court and the transferee court if we were to decline the stay and continue the litigation"); *Foltz v. DePuy Orthopaedics, Inc.*, No. 10-809, 2010 U.S. Dist. LEXIS 120909, at * 2 (S.D. Ill. Nov. 15, 2010) (a stay "will avoid inconsistent legal rulings").

Here, absent centralization there will be nearly 40 actions proceeding in numerous federal district courts involving identical factual allegations and claims, and encompassing individual defendants and putative classes of similarly situated parties across the country, all of whom cashed out their Tribune stock, or otherwise received proceeds, in connection with a single LBO. Moreover, without centralization, there would be a strong likelihood of inconsistent results, as the various district and state courts where these suits are pending could easily decide identical issues differently.  Thus, this first factor ─ conservation of judicial resources ─ strongly favors the issuance of a Stay.

B.      *The Balance of Harms ─ Factors Two and Three ─ Favor Granting the Requested Stay.*

The balance of the harms (*i.e.*, potential prejudice to the Plaintiffs and the Defendants) also favors a stay.  As courts have recognized, the failure to stay one of multiple actions pending determination of an MDL Motion imposes unnecessary burden and hardship on the party required to litigate in multiple forums.  *See Paul*, 2009 U.S. Dist. LEXIS 64420, at ** 4-5 (discussing hardship of being forced to participate in duplicative discovery); *Tench v. Jackson Nat'l Life Ins. Co.*, No. 99-5182, 1999 U.S. Dist. LEXIS 18023, at * 3 (N.D. Ill. Nov. 10, 1999) (stays are granted "to avoid duplicative efforts").  These same considerations compel a stay here. It would impose substantial hardship on Plaintiffs to litigate motions to dismiss, motions for class certification, and other pretrial motions in nearly 20 jurisdictions.  Moreover, as discussed

10

above, the risk of conflicting rulings on these issues could be prejudicial to Plaintiffs.

In contrast, Defendants will not be prejudiced if this Court enters the requested Stay because the Stay will result in all of the parties ─ Plaintiffs and Defendants ─ conserving their resources.  Assuming this Court would grant a stay, Plaintiffs will provide periodic status reports on the Bankruptcy Proceedings and MDL process to this Court.  Courts have granted stays in similar situations.  *See Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1290 (7th Cir. 1988) (affirming stay order under *Colorado River* doctrine; adding that because the stay was in effect "until resolution of the [parallel] state case", the district court should require the parties to provide status reports on the state litigation at least every six months "in the event that it should become advisable to lift the stay"); *Hanny v. United States*, No. 92-20215, 1993 U.S. Dist. LEXIS 2138, at * 7 (N.D. Ill. Feb. 10, 1993) (entering stay order; ordering status reports at six-month intervals).

Thus, the second and third factors ─ prejudice to Plaintiffs if the Stay is not granted and prejudice to Defendants if the Stay is granted ─ also strongly favor the issuance of the Stay.

## III.     Plaintiffs Should Be Permitted Limited Carve-Outs to the Stay.

Plaintiffs seek limited carve-outs to the Stay, of which two merit particular discussion. First, Plaintiffs seek permission to file a Rule 26(d)(1) motion seeking leave of the Court to conduct preconference discovery that may be necessary solely for the purpose of preventing applicable statutes of limitation or other time-related defenses from barring any state law constructive fraudulent conveyance claims against any former Tribune shareholder to recover stock redemption/purchase payments made to such shareholders in connection with the 2007

11

Tribune LBO. While Plaintiffs utilized the best information available regarding the shareholder parties to the LBO in order to initiate this action, toll any applicable statute of limitations, and effectuate service, further discovery may be required at the outset of this case.

As discussed above, on April 25, 2011, Plaintiffs received leave of the Bankruptcy Court to assert the Creditor SLCFC Claims and confirmation that initiating this action would not violate the automatic stay provisions under Bankruptcy Code section 362(a). (Zensky Decl. Ex. C ¶ 3.) On April 29, 2011, Plaintiffs subpoenaed the Committee to obtain access to information regarding the identities of the shareholders who received cash transfers pursuant to the LBO, their locations, and the amount of the cash transfers the shareholders received. (Zensky Decl. ¶ 12.) The Committee had previously collected this information by issuing over 1,600 subpoenas in November 2010 to more than 900 separate entities.[2] (Zensky Decl. ¶ 12.) Plaintiffs received this voluminous amount of data from the Committee only eight days before they filed this lawsuit.

Because the Committee provided the requisite information approximately one week before Plaintiffs filed the instant Complaint, and Plaintiffs understand that the Committee is still receiving new and updated information regarding the identities of these shareholders, Plaintiffs may require the opportunity to conduct limited discovery of Defendants and third-parties. (Zensky Decl. ¶ 12.) Such discovery should be permitted during the requested Stay and is appropriate under Rule 26(d)(1), as it addresses threshold matters such as jurisdiction and proper service of process, and is not burdensome in scope. *See* F.R.C.P. 26(d)(1) ("A party may not seek

---

[2] The Committee's data regarding the identities of the shareholders, their location, and the quantum of cash transferred to each shareholder was subject to confidentiality agreements the Committee entered into with certain shareholder parties, as well as the Protective Order entered by the Bankruptcy Court on May 19, 2011. (Compl. ¶ 21.)

discovery from any source before the parties have conferred as required by Rule 26(f), except…when authorized by these rules, by stipulation, or by court order").

Indeed, the SLCFC Order expressly contemplated that Plaintiffs would engage in such discovery during the pendency of the Stay, and Plaintiffs ask the Court to afford this aspect of the SLCFC Order due deference as well.  (Zensky Decl. Ex. C ¶ 6.)  Therefore, for the reasons stated above and in accord with Judge Carey's Order, Plaintiffs request that the Court grant the Stay, but expressly carve out from the Stay permission for Plaintiffs to file a Rule 26(d)(1) motion seeking leave of the Court to conduct early discovery limited to the topics that will be set forth in Plaintiffs' forthcoming Rule 26(d)(1) motion, as well as permit Plaintiffs, if necessary, to amend the Complaint pursuant to Rule 15 once it completes this limited discovery so that it can drop or reassign defendants from one action to another as governed by Rules 21 and 41, if so required.

Second, Plaintiffs seek a carve-out to the Stay requiring Defendants to enter an appearance in the case.  Requiring all of the Defendants to enter an appearance would assist with this Court's case management and ensure that each Defendant was properly served with any further notices, orders, or pleadings in this action.

**IV.     Alternatively, Should The Court Deny The Stay Motion, Plaintiffs Request That The Court Postpone the Filing Of Any Answers Or Other Pleadings Responsive To The Complaint Until Such Time As The Parties Have Convened For A Case <u>Management Conference And The Court Enters A Case Management Order.</u>**

In the alternative, if the Court denies Plaintiffs' request for the Stay, Plaintiffs request that the Court postpone the filing of any answers or dispositive motions by Defendants until such time that a case management conference can be convened and an order granting a case management schedule is entered.  In light of the complexity of the action, the number of individually named defendants, and the class action component to the case, it would be in the best interests of the Court and the parties for briefing on dispositive motions and any other

13

motions practice to be conducted pursuant to an orderly case management schedule entered by this Court, as opposed to potential, multiple motions being litigated piecemeal and without coordination.

**CONCLUSION**

For each of the foregoing reasons, Plaintiffs respectfully request that the Court:

(i) grant Plaintiffs' amended motion for a Stay of Defendants' time to respond to the Complaint in this action or commence motions practice until further order by the Bankruptcy Court in the Bankruptcy Proceedings or further order of this Court;

(ii) order that the Stay does not bar, but instead permits, (a) Plaintiffs to amend the Complaint or file a motion for leave to amend the Complaint; (b) Plaintiffs to voluntarily dismiss this action or one or more defendants pursuant to Federal Rule of Civil Procedure 41; (c) Plaintiffs to move to add or drop a party or to sever any claim against a party pursuant to Federal Rule of Civil Procedure 21; (d) Plaintiffs to file their MDL Motion; and (e) Plaintiffs to file a Rule 26(d)(1) motion seeking leave of the Court to conduct early discovery limited to that which may be necessary solely for the purpose of preventing applicable statutes of limitation or other time-related defenses from barring any state law constructive fraudulent conveyance claims against any former Tribune shareholder to recover stock redemption/purchase payments made to such shareholders in connection with the 2007 Tribune LBO; and

(iii) require each Defendant to enter an appearance in the action so that they or their counsel are known, in order to better facilitate service of further notices, orders, or pleadings upon them in the action.

In the alternative, in the event that the Court denies Plaintiffs' requested Stay, Plaintiffs respectfully request that the Court convene a case management conference and require the entry of a case management order, which provides, among other things, a briefing schedule for the

litigation, prior to any Defendant being permitted to answer the Complaint or file an otherwise responsive pleading.

Dated: July 22, 2011

Respectfully submitted,

/s/ Richard S. Wayne
Richard S. Wayne Ohio Bar #0022390

/s/ Charles C. Ashdown
Charles C. Ashdown Ohio Bar #0037269

OF COUNSEL:

/s/ Nicolas D. Wayne
Nicolas D. Wayne Ohio Bar #0083690

Daniel H. Golden
David M. Zensky
Stephen M. Baldini
James P. Chou
Jason L. Goldsmith
AKIN GUMP STRAUSS HAUER
  & FELD LLP
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

STRAUSS & TROY
150 East Fourth Street
Cincinnati, OH 45202-4018
(513) 621-2120 – Telephone
(513) 241-8259 – Facsimile
E-mail: *rswayne@strausstroy.com*
E-mail: *ccashdown@strausstroy.com*
E-mail: ndwayne@strausstroy.com

*Counsel for Plaintiffs, Deutsche Bank Trust
Company Americas, et al.*

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing has been filed electronically with the U.S. District Court for the Southern District of Ohio this 22nd day of July, 2011. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. If a party is not given notice electronically through the Court's system, a copy will be served by First Class U.S. Mail this 22nd day of July, 2011.

/s/ Charles C. Ashdown
Charles C. Ashdown Ohio Bar #0037269

2628185.1

15