UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

|  |  |
|---|---|
| DEUTSCHE BANK TRUST COMPANY AMERICAS, in its capacity as successor indenture trustee for certain series of Senior Notes, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> AMERICAN ELECTRIC POWER DEFINED BENEFIT, *et al.*, <br><br> Defendants. | Civil Action No. 1:11-cv-358 <br> (Judge Beckwith) <br> (Magistrate Judge Bowman) |

### DECLARATION OF DAVID M. ZENSKY
### IN SUPPORT OF PLAINTIFFS' AMENDED MOTION TO STAY

I, David M. Zensky, counsel of record for Plaintiffs Deutsche Bank Trust Company Americas in its capacity as successor indenture trustee for a certain series of Senior Notes ("DBTCA"),[1] Law Debenture Trust Company of New York, in its capacity as successor indenture trustee for a certain series of Senior Notes ("Law Debenture"), and Wilmington Trust Company, in its capacity as successor indenture trustee for the PHONES Notes ("Wilmington Trust" and, together with DBTCA and Law Debenture, "Plaintiffs"), hereby declare under penalty of perjury as follows:

1. I submit this declaration in support of Plaintiffs' Amended Motion To Stay.

2. The Tribune Company's ("Tribune") chapter 11 proceedings (the "Bankruptcy Proceeding") (Case No. 08-13141 (KJC)) are currently pending before Chief Judge Carey in the

---

[1] Any capitalized terms shall have the meanings defined herein or ascribed thereto in the Complaint filed in the above-captioned action.

United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). I have been involved in the Bankruptcy Proceeding since September 2010 and am familiar with the facts and issues in that proceeding. I make this declaration on the basis of my personal knowledge.

3. The statutory period during which the Debtors had exclusive standing to bring state law constructive fraudulent conveyance claims expired on December 8, 2010 (two years after the petition date), at which time Plaintiffs, and other creditor parties, regained their ability to commence such actions on their own behalf.

4. On February 4, 2011, Tribune and the other debtor entities, the Official Committee of Unsecured Creditors of Tribune (the "Committee"), and certain lender parties in interest filed their Second Amended Joint Plan of Reorganization for the Debtors (the "DCL Plan"). No. 08-13141 (KJC), DCL Plan, Feb. 4, 2011, ECF No. 7801. On February 25, 2011, the largest noteholder of the Debtors, and Plaintiffs herein, jointly filed a competing plan of reorganization (the "Noteholder Plan" and together with the DCL Plan, the "Competing Plans"). No. 08-13141 (KJC), Noteholder Plan, Feb. 25, 2011, ECF No. 8169.

5. Both Competing Plans included a mechanism by which state law constructive fraudulent conveyance claims, such as those asserted in this action, could be transferred to and litigated by a Creditors' Trust, and proceeds from such actions would flow to beneficiaries according to terms of the Competing Plans.

6. The Robert R. McCormick Tribune Foundation and the Cantigny Foundation (together, the "Plan Opponents") objected to both the Competing Plans because they claimed, among other things, that "(a) the proposed Creditors' Trust would not have standing to bring the Constructive Fraud Claims against the selling Shareholders, and (b) section 546(e)'s safe harbor

provision preempts all attempts to assert the Constructive Fraud Claims." No. 08-13141 (KJC), McCormick and Cantigny Objection 9, Feb. 15, 2011, ECF No. 7972.

7. The Plan Opponents submit that neither of the Competing Plans can be confirmed because they provide for the litigation of the Creditor SLCFC Claims, which according to the Plan Opponents violate provisions of the Bankruptcy Code. Specifically, the Plan Opponents argue that Plaintiffs lack standing to bring the Creditor SLCFC Claims because the Debtors retained the exclusive ability to attack the LBO payments to the shareholders when the Committee Action was brought on the Debtors' behalf. McCormick and Cantigny Objection 11-14. Moreover, the Plan Opponents object to the Competing Plans based on their belief that Bankruptcy Code section 546(e) bars state law causes of action to recover payments to stockholders in exchange for the transfer of securities. McCormick and Cantigny Objection 14.-24

8. Beginning on March 7, 2011, the Bankruptcy Court held a two-week evidentiary trial on the Competing Plans of reorganization, and closing argument occurred on June 27, 2011.

9. Prior to that, in order to prevent state law causes of action from potentially becoming time-barred while the litigation over the Competing Plans continued in the Bankruptcy Court, Plaintiffs filed on March 1, 2011, a motion which moved the Bankruptcy Court for an order (i) determining that eligible creditors regained the right to prosecute the Creditor SLCFC Claims because the statute of limitations for the Debtors to commence state law fraudulent conveyance actions expired on December 8, 2010, and the Debtors' estates failed to assert such claims; (ii) determining that the automatic stay does not bar Plaintiffs from commencing the Creditor SLCFC Claims; and (iii) granting leave from a mediation order by the Bankruptcy Court to permit commencement of the Creditor SLCFC Claims (the "Standing Motion"). A true

and correct copy of the Standing Motion is attached to the Original Stay Papers (Docket #15) as Exhibit A.

10. On March 22, 2011, the Bankruptcy Court heard oral arguments (the "SLCFC Argument") on the Standing Motion. A true and correct excerpt from the transcript of the SLCFC Argument is attached to the Original Stay Papers (Docket #15) as Exhibit B.

11. On April 25, 2011, the Bankruptcy Court granted the Standing Motion and issued an order (the "SLCFC Order") providing that sections 362(a) or 546(a) of the Bankruptcy Code do not bar Plaintiffs from commencing state law constructive fraudulent conveyance claims against former Tribune shareholders, and permitting Plaintiffs to commence state law constructive fraudulent conveyance litigations, and to pursue discovery as necessary to prevent any applicable statute of limitations or time-related defenses from barring Plaintiffs' claims — provided that Plaintiffs filed an application for a stay after the litigation commenced. A true and correct copy of the SLCFC Order is attached to the Original Stay Papers (Docket #15) as Exhibit C.

12. On April 29, 2011, Plaintiffs subpoenaed the Committee to obtain access to information regarding the identities of the shareholders or other entities that received cash transfers in connection with the LBO, their locations, and the amount of the cash transfers the shareholders received. The Committee had previously collected this information by issuing over 1,600 subpoenas in November 2010 to more than 900 separate entities. No. 08-13141 (KJC), Protective Order, May 19, 2011, ECF No. 8949. A true and correct copy of the Protective Order is to the Original Stay Papers (Docket #15) as Exhibit D. Plaintiffs received crucial and voluminous data from the Committee regarding the LBO transfers approximately eight days before Plaintiffs were compelled to file the Creditor SLCFC Claims. The Committee is still receiving new and updated information regarding the identities of these shareholders

13. On June 2, 2011, Plaintiffs commenced this action and are now in the process of serving Defendants with the Complaint. Plaintiffs also filed 49 substantially similar complaints, commencing suits in 21 other states (together with this action, the "SLCFC Actions"). All of the SLCFC Actions were filed in federal district courts, with the exception of ten cases filed in New York, Delaware and California state court. The lawsuits in the other states, like here, include constructive fraudulent conveyance claims against named defendants as well as, in some actions, class claims against a defendants' class.

14. Absent consolidation and transfer, Plaintiffs will be forced to respond piecemeal to duplicative motions filed by more than 1,000 defendants.

15. On June 13, 2011, Plaintiffs moved the Bankruptcy Court for an order confirming that neither the automatic stay nor the SLCFC Order prohibit Plaintiffs from: (i) moving to consolidate and/or coordinate the lawsuits, including by filing a motion requesting that the Judicial Panel on Multidistrict Litigation transfer and consolidate this action along with the other SLCFC Actions (the "MDL Motion"); and (ii) in the event that any one or more courts or parties do not implement and/or abide by the stay mandated by the SLCFC Order, taking all appropriate actions in response to any motions, pleadings, or orders filed in the SLCFC Actions (the "Clarification Motion"). A true and correct copy of the Clarification Motion is attached to the Original Stay Papers (Docket #15) as Exhibit E.

16. On June 28, 2011, the Bankruptcy Court granted the Clarification Motion, and confirmed that the MDL Motion is permitted under the SLCFC Order. A true and correct copy of Bankruptcy Order granting the Clarification Motion is attached to the Original Stay Papers as Exhibit F. Consequently, Plaintiffs intend to file the MDL Motion to consolidate and transfer the SLCFC Actions for coordinated pretrial treatment pursuant to 28 U.S.C. § 1407.

17. On July 1, 2011, Plaintiffs filed a Motion and Memorandum to Stay Defendants' Time to Respond to the Complaint in this Action or Commence Motions Practice and supporting Declaration of David M. Zensky (Docket 15) (collectively, the "<u>Original Stay Papers</u>")

18. Although the Original Stay Papers were intended to be consistent with the SLCFC Order, Judge Carey observed, during a July 15, 2011 telephone conference requested by a shareholder defendant in one of the SLCFC Cases, that the Original Stay Papers filed in actions across the country should more closely track the explicit terms of the SLCFC Order.

19. Specifically, Judge Carey observed that the references to (i) the October 31, 2011 date (or any date certain), and (ii) confirmation of a plan of reorganization by the Bankruptcy Court as triggering dates for the stay to terminate were not entirely in line with the terms of the SLCFC Order.

20. Accordingly, Plaintiffs have revised the language of the requested relief so that the only events that should trigger the time for Defendants to respond to the Complaint or commence motion practice are further orders by the Bankruptcy Court or this Court that affects the Stay, and so that the language of the requested relief otherwise tracks the language of the SLCFC Order.

July 22, 2011
New York, New York

/s/ David M. Zensky
David M. Zensky (admitted *pro hac vice*)
AKIN GUMP STRAUSS HAUER
 & FELD LLP
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
dzensky@akingump.com
*Counsel for Plaintiffs, Deutsche Bank Trust Company Americas, et a*

106315.001.2628761.1

6